IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS W. MARTINEZ-SÁNCHEZ, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V., and CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V. (VOLARIS AVIATION HOLDING COMPANY), foreign corporations collectively d/b/a "VOLARIS",<br><br>    Defendant. | Case No.. 1:20-cv-1966<br><br>Honorable _____ |

## CLASS ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTION

1.  Plaintiff Carlos W. Martinez-Sanchez ("Plaintiff"), by and through his counsel, files this Class Action Complaint against CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V., and CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V., (collectively and hereinafter "***Defendants***" or "***Volaris***"), on behalf of himself and on behalf of a class of similarly situated individuals, and allege, upon personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

2.  The Covid-19 pandemic confronts Americans with one of the greatest health and economic crises in the history of our nation, threatening the lives and livelihoods of millions. Shared sacrifice and mutual responsibility have never been more important to navigate these uncertain times. Tens of millions have been forced to file for unemployment system in a matter

of weeks, and pocketbooks are being stretched like never before.  For individuals and businesses alike, the need for cash and liquidity has never been greater.

3. Unfortunately, Volaris, a cut-rate airline company, has refused to honor its contractual obligations during this crisis.

4. With mounting flight cancellations due to the Covid-19 pandemic, Defendants have refused to provide contractually guaranteed full cash refunds for cancelled flights to passengers. Defendants have reprehensibly extracted maximum capital from customers, while padding their own balance sheets. Defendants' innocent customers are now left holding the bag.

5. In lieu of contractually guaranteed refunds, Defendants have required Plaintiff and the Class to accept devalued flight coupons for use on its own airline, which expire exceedingly quickly and carry substantially less or no value to Plaintiff and the Class during this uncertain time.

6. Defendants' uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this action against Defendants for breach of contract and to seek an order from this Court requiring Defendants to, among other things, (1) discontinue the illegal practice of issuing coupons in lieu of refunds to any Class Member who has not requested coupons, and (2) pay damages and/or restitution to Plaintiff and the Class.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendants.  The number of members of the proposed class is in the aggregate greater than 100 and more than two-thirds of the class members reside in states other than the state in which Defendants are citizens.

8. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in New York, including entering into contracts with New York residents, maintaining a continuous physical business presence in New York, and providing flights and services to customers in New York. Further, a substantial portion of the acts complained of herein took place in New York.

9. Venue is proper in the Eastern District of New York because Defendants systematically and continuously conduct business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

**PARTIES**

10. Plaintiff Carlos W. Martinez-Sanchez is an individual and a citizen of New York.

11. Defendant CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V. (Volaris Aviation Holding Company) is a foreign corporation organized under the laws of Mexico with its principal place of business in Santa Fe, Mexico City, Mexico.

12. Defendant CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V. is a wholly-owned subsidiary of the Volaris Holding Company, organized under the laws of Mexico, with its principal place of business in Santa Fe, Mexico City, Mexico.

**FACTUAL ALLEGATIONS**

13. Volaris is an international cut-rate air carrier that ordinarily offers more than 197 regular flight routes, servicing 40 cities in Mexico and an additional 25 cities in the United States and Central America.

14. Defendants' flight route network provides regular routes between more than 20 airports and destinations in the United States, including Albuquerque, Charlotte, Chicago, Dallas,

Denver, Fresno, Houston, Las Vegas, Los Angeles, Miami, Milwaukee, New York, Oakland, Orlando, Phoenix, Portland, Reno, Sacramento, San Antonio, San Jose (CA), Seattle, and Washington D.C..

15. Defendants' regular routes include multiple flights departing from and arriving at New York's John F. Kennedy International Airport (JFK), which is located in the Eastern District of New York.

16. Defendants offer and sell flight tickets directly to customers, who make monetary payments to Defendants in exchange for a selected flight itinerary that conforms to consumers' specifically selected travel schedule.

17. Defendants collect passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

18. As part of each ticket purchase, Defendants made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

19. In Volaris' Contract of Carriage, Defendants promise that in the event of a cancelled or substantially interrupted flight, "alternate transportation or compensation will be provided to Passengers in accordance with rules issued by the U.S. Department of Transportation (DOT)."[1]

20. 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation

---

[1] https://cms.volaris.com/globalassets/pdfs/eng/contractofcarriageint.pdf (last visited April 29, 2020).

Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section. *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23110-01, 23129.

21. Prior to the Covid-19 crisis, Defendants honored cancellation promises and warranties pursuant to DOT rules to provide customers with a full refund for all cancelled flights.

### *Defendants' Disgraceful Response to the Covid-19 Pandemic*

22. On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

23. As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

24. On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

25. By March, it was abundantly clear that the United States was going to be hit hard by the rapidly spreading Covid-19 pandemic and that dramatic changes to ordinary consumer behavior, including widespread discontinuation of non-essential travel and congregating in enclosed spaces (like airports and airplanes), were imminent.

26. Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

27. The Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

28. It was entirely known and foreseeable to Defendants that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

29. Yet, Defendants quietly ceased honoring contractual agreements with Plaintiff and the putative class by discontinuing full cash refunds for cancelled and substantially rescheduled flights. Instead, Defendants offered customers only devalued redeemable credits for future use on their own airline.

30. Further, Defendants set harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many consumers would not redeem the credits.

31. The practice of offering credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when air travel will once again be safe.

32. The future flight credits provide Defendants additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendants additional future profits—while retaining Plaintiff cash in the interim—substantially diminishing value for Plaintiff and the putative class.

33. Recognizing the abuse, and potential for abuse, by Defendants and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to

remind Defendants that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

34. On April 3, 2020, the DOT issued a notice to remind carriers that, "passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed."[2] The notice stated that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged*." (Emphasis added).

35. The DOT notice continued that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future

---

[2] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited April 24, 2020).

travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

36. Defendants have failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712.

37. Defendants have deprived Plaintiff and the Class of the refunds to which they are entitled by (1) failing to provide refunds to their credit or debit cards; (2) automatically issuing coupons or vouchers in place of refunds; (3) rendering it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or (4) obscuring passengers' right to a monetary refund.

38. To the extent that it can be argued that Defendants' terms purport to require any affirmative action on the part of any passenger to choose a monetary refund over an automatic coupon or voucher, which by their terms they do not, such requirement is void as contrary to law and public policy.

### *Plaintiff's Use of Defendants' Services*

39. Plaintiff Carlos Martinez-Sanchez purchased tickets from Defendants for a scheduled flight on March 23, 2020 from New York (JFK) to El Salvador, including a return trip.

40. Plaintiff paid approximately $800 for the tickets.

41. Defendants cancelled Plaintiff's March 23 flight because the El Salvador airport was reportedly closed.

42. Plaintiff called Volaris to cancel and receive a refund, but Volaris instead offered him a flight change to April 6, 2020 for an additional $100 change fee. Plaintiff agreed to change his flight to April 6, and he paid an additional $100 fee to Volaris.

43. Volaris subsequently sent Plaintiff an email that his April 6, 2020 flight from New York to El Salvador was cancelled.

44. Volaris offered Plaintiff only a voucher that must be redeemed between April and June 2020.

45. Plaintiff did not want a voucher in lieu of a refund.

46. Plaintiff has been out of work due to Covid-19 and was falling behind on rent. At the time of his flight cancellation, Plaintiff needed cash, not an expiring voucher for a flight that remains uncertain to occur as scheduled.

47. Plaintiff called Volaris to request a refund.

48. Upon request by Plaintif, Defendants refused to provide Plaintiff with a refund for the ticket, stating specifically that a refund is against Volaris policy.

49. Plaintiff does not know whether it will be safe to engage in air travel by that June deadline for booking a flight, or whether he will be able to afford a future trip at any specific future date.

50. Plaintiff has suffered damages as a result of Defendants conduct.

## CLASS ALLEGATIONS

51. Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

All persons residing in the United States or its territories who purchased tickets for travel on a Volaris flight to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Defendants, and who were not provided a refund, including charges and fees. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a refund; (b) any person who requested and received alternative air transportation in lieu of a refund; (c) all persons who are employees, directors, officers, and agents of either Defendants; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

52. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

53. Numerosity. Fed. R. Civ. P. 23(a)(1). Defendants carries hundreds of thousands of passengers per year on thousands of normally scheduled of flights. A significant percentage of those flights beginning in March 2020 have been cancelled. At a minimum, there are more than ten thousand Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendants' records.

54. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. Common issues include:

    A. Whether Defendants formed contracts with its passengers in selling them tickets for air travel;

    B. Whether Defendants' conduct breaches the terms of its contracts with its passengers;

    C. Whether Defendants are required to provide a refund, rather than an expiring voucher, to passengers for cancelled flights.

    D. The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled.

55. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class he seeks to represent. Plaintiff and all Class members were exposed to substantially

similar contracts, breaches, and sustained injuries arising out of and caused by Defendants' unlawful conduct, which occurred pursuant to a uniform policy.

56. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

57. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendants, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendants' misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

58. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

59. Class certification is also appropriate under Rule 23(b)(2), as Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

60. Plaintiff incorporates all factual allegations in the Complaint by reference as if fully set forth herein.

61. A contract was formed between Plaintiff and Class members on the one hand and Defendants on the other with respect to the purchase of airfare.

62. The contract was offered by Defendants and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

63. The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

64. Plaintiff and the Class performed their obligations under the contract.

65. Defendants breached the contract when they sought to provide rapidly expiring coupons or vouchers in lieu of refunds for passengers on canceled or substantially delayed/interrupted flights.

66. Defendants' breaches were willful and not the result of mistake or inadvertence.

67. As a result of Defendants' breach, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the class of similarly situated individuals, requests the Court to:

    (a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representatives of the class and designate counsel of record as class counsel;

    (b) Order Defendants to provide actual damages and equitable monetary

relief (including restitution) to Plaintiff and class members and/or order Defendants to disgorge profits they realized as a result of their unlawful conduct;

(c) Order Defendants to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d) Declare Defendants' conduct unlawful and enter an order enjoining Defendants from continuing to engage in the conduct alleged herein;

(e) For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f) For costs of the proceedings herein;

(g) For reasonable attorneys' fees as allowed by law; and

(h) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: April 29, 2020                             Respectfully submitted,

**LIDDLE & DUBIN, P.C.**

s/ Nicholas A. Coulson

David R. Dubin (PHV Forthcoming)
ddubin@ldclassaction.com
Nicholas A. Coulson (PHV Forthcoming)
ncoulson@ldclassaction.com
975 E. Jefferson Avenue
Detroit, Michigan 48207

Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiff and the Putative Class*